looks like everybody's ready go ahead and make an appearance and you may proceed morning your honors may please the court Jake Rochebeau for the appellant Jamarius Moore. In Moore 1 this court's sua sponte described a two-step process it said applies in probation revocations. First resentencing on the original offense and then a separate sentence for a probation violation. This process has never been employed in any other federal case and it violates the plain language of the statute. For two independent reasons this court is not bound to follow this two-step process as law of the case. First it is merely dicta as it was not necessary to the holding of the case and second even if it is generally law of the case it is clearly erroneous and will work a manifest injustice. There's little dispute that this two-step process is incorrect. Tellingly the government never expressly defends the propriety of this two-step process only says that it wasn't clearly erroneous and even then it offers only a token statement that one sentence that it was rooted in the guidelines and prior circuit precedent. However the two-step process is contrary to the plain language of the statutes finds no support in the guidelines case law or legislative history. So turning to the statutes, the general probation sentencing. You know the below, you weren't at the resentencing were you? It's a different lawyer? No your honor, more of the original appeal. Yeah so you know it comes back and more we'll call it more one says what it says and you know there's there's no objection you know procedural objection to it so we're here on plain air right? Right. Well I guess I'm curious what you think should have happened you know if more one just said you know remand with no two-step articulation what what should have unfolded here how should it have proceeded? So if more one had not described the process at all or given what it said what how should counsel have proceeded? Yeah for example if we rule in your favor today what would what would be the proper course on remand? So it's just it's just a one-step process where you you look at the probation revocation guidelines you look at chapter 7 that's that's all when we cited 16 cases in our opening brief that's what courts do that's what courts have have always done. Could the district court look at the you know factors for sure the history and characteristics of the defendant? Yeah and here here was a judge he he said at the beginning of the hearing that if he were looking at the initial crime he would have sentenced him to 51 months and and was it was pretty firm on that you know just I know in our in more one the opinion said that the 51 months is locked in but the judge said that's you know in his discretion what he would impose anyway you know that does it how does that inform our view of the case and then he tacked on some additional time for the probation violation. Sure well I think that's that is a result of the clearly erroneous two-step process where where step one is you do re sentence based on the original offense only and then you look to the probation violation that's not how it works you start with the guideline the revocation guidelines which which in this case were 5 to 11 months and then the district court can look to the 3553 factors just like in any other case and and could vary upwards because so the guidelines specifically say that you're supposed to sentence based primarily just like in the supervised release revocation you're alternative that based on that let's say you know we start with the 12 months 5 to 12 months would it be substantively substantively reasonable to vary upward in in this case to either 51 months or 80 months. So in in more one the alternative argument was that so in more one everyone's operating on the assumption that you know the PSR came out it's 5 to 11 months and it was up to 84 months and so in more one Mr. Moore argued that that sentence was substantively unreasonable more one didn't didn't address that and you know we haven't argued on appeal the second time that an 80 month sentence is substantively unreasonable. So we'd be back here a third time if he gets 80 80 months if we if we send it back and he gets 80 months. Well if there's another procedural error, sure. The district judge though on remand could have had a singular sentence of 20 years, couldn't he? Even according to the guidelines chapter 7, is that correct? Yeah so unlike supervised release revocations which have the separate supervised release statutory ranges on a the original is driven by the original offense. Right. So the original stat max is 20 years. So he could have gotten that much? Yes. All right and yet he got just two-thirds reduction from that, 80 months. That's true but we don't start with... I apologize. Why didn't that suggest that there's no real prejudice here? He could have gotten 20 and he got 80. Even four months less than he got you know in the original. Well first of all we never start with the stat max. We start with the guidelines and usually when we think about whether we can show any prejudice under third prong it's by reference to the anchor which is the guidelines. So I've never seen a court say well this stat max here was life you only got 50 years that's significantly less than a person's lifetime therefore there's no prejudice. The guidelines is the anchor. Here it's 5 to 11 months and that's a significant upward variance from what was effectively a guideline range as So here the guidelines aren't you know in the 50s and 60s it's 5 to 11 and as you know the government argues that we can't meet the third prong there's no reasonable probability of a lower sentence below because last time he only got four months off but four months off any even a day off of your sentence there's a reasonable probability you're gonna get one day off your sentence that satisfies the third prong and so what we learned from the remand for more one is that procedure matters and it matters to this judge when when he was forced to take on a different procedure then the sentence ended up lower and so there's every reason to believe. Well I'm just stymied by the proposition that you object to the two-step process from the original panel so it goes back and if you do it exactly according to chapter 7 which is only advisory your clients facing 20 years. It's just a disconnect to me. Well I mean that's going to be the case in resentencing when it when it gets remanded there's certainly a possibility of a higher sentence on appeal I mean anecdotally that just almost never ever happens and here just based on the procedure alone at the first remand the district court was instructed start with 51 months go up from there now under a proper procedure the the remand instruction is start with 5 to 11 months go from there. Well you know the the guidelines was what it was and the the judge originally would have gone all the way up to 84 and he could now under the right procedure what you say is the right procedure could have imposed 20 years so I don't see what the problem is from a reasonable sentencing of a month. So I I think this would be analogous to let's say we were up here on a resentencing stat mat you know since statutory sentencing range but just like this was an initial sentencing the normal direct appeal from a sentencing if the guidelines range was 51 to whatever it was but the statutory sentencing range was thank you was 0 to 20 if there was say a one level offense level error then the guidelines would go lower from 51 to 63 down to I'll just guess 46 to 55 and then even though that's the the guideline range there's some overlap there even though on remand it's possible you get up to 20 years we still say that when there is that type of error in the sentencing range there's just a reasonable probability that they could get a lower sentence because the same is true here the anchor on remand was 51 months you start with that then you add 5 to 11 and now if we're successful the remand order would be you start with 5 to 11 so it's theoretically possible he could get 20 years that would be outrageous and vindictive and we definitely be back but there's just at least a reasonable probability that you know he went from 84 to 80 and there's a reasonable probability he gets even 79 and that's enough on our third problem and then I just want to address why aren't we confined by the law of the case doctrine thank you honor for two specific reasons first is that it was dicta this two-step process that that more one described is dicta dicta is not law of the case so the holding of more one why is it dicta he I don't understand how that's dictum the case comes up to the panel the 10th Circuit and they they they perceive an error in the process of sentencing and they're going to reverse that how is telling the judge the right way to do it dicta I it went beyond what the actual error was that description the two-step process went well beyond what the actual error and the issue was in more one so I got the actual panel said the error was you didn't use a two-step process so the error was that you preordained the sentence without okay that was one of the errors what that was the only plain error that was the only issue so the only thing plain about the error was that it's plainly erroneous to pre-ordain a sentence because it violates the the general order of operations that's applicable in every federal sentencing as this court has described in Savio and Amana's as the Supreme Court said and go so the panel said your process was wrong you can't you can't have a preordained sentence so the process and sentencing was wrong yeah preordaining is plainly incorrect because the general rule is that you have to find facts calculate the whether the variance is is appropriate and here you just skipped over the most basic elements of sentencing and just said I already told you 84 I'm giving you 84 and that's that was what was playing the erroneous when the when the court went on to describe the two-step procedure that applies in in probation that that wasn't that wasn't the holding that wasn't necessary to finding that the district court aired that was just additional additional guidance that really wasn't at issue in the case and and tellingly none of the parties brief that issue the error wasn't that the district court employed a two-step process instead of a one-step process that wasn't the dispute so anything beyond that is not central if they had not referenced the two-step process doesn't seem like that be almost like telling the judge okay you can't do the 84 months because you can't do pre sentencing then in that effectively telling the judge you got to give me the 51 or certainly not more than the 63 the top of the range I think what more one should have said was ending with and it would have it would have addressed all of the all the errors all the issues brought raised in the appeal is just you can't preordain a sentence because it that's what you would like to have happened but what happened was they said do it this way so had they not stated the two-step process wouldn't that be a statement to the trial judge on resentencing you have to go back and you're stuck with the 51 to 63 range I don't think so because the 50 that was the being stuck with the 51 to 63 range is a product of the erroneous two-step process if they had just remanded the district court would have done what it did the first time in terms of calculating the guidelines and correctly started at 5 to 11 months not to the extent I have any time remaining for questions good morning your honors Brian Clark for the United States may it please the court mr. Moore asks this court to vacate his sentence for a second time not because the district court flouted this courts instructions in more one but because it followed them he argues that more ones two-step sentencing process which were which this court has has covered and well knows what misled the district court into committing legal errors and the two arguments mr. Moore makes in support is that the most of this courts reasoning and analysis and more one was dicta and also an exception for manifest injustice neither one of those exceptions applies with respect to dicta judge Murphy you were right to say that mr. Moore has identified only one of the errors and the sentence that mr. Moore likes to relate rely on in more one is where this court said the district court committed an error by pre-ordaining a minimum future sentence that same sentence in more one continues to say that a related error was bypassing the required analysis the required analysis was the two-step analysis that this court went on to lay out the second thing I would point you to in more one to show that the two-step analysis was not dicta is where this court directed the district court to apply the two-step analysis saying that was locked in to applying 51 months at step one I am a bit mystified where this two-step process comes from it's really the panel didn't cite to a case and I don't think that's the way it's normally done I've not been a sentencing judge on the district court but you know he's he's resentencing a defendant for a probation violation what is the origin of the two-step process is it unique to this case and if it is unique to this case and it's wrong you know what do we do about it right I think that's a fair point I'll take those sort of two parts of the questions in order first with respect to the merits and the two-step analysis I mean I think one of the driving forces behind the two-step analysis that this court articulated was the difference between revocation of probation and revocation of supervised release it's not a distinction that this court has really put its finger on in its previous cases and I think it's an important one because what this court said was when a district court revokes a defendant's probation because probation is the sentence for the underlying criminal offense that revocation means that there is no sentence for the underlying criminal offense but then look at it but isn't is it counsel right that the guidelines the advisory guidelines chapter 7 tells us to you know go through the subchapter process and that you begin and this is what the probate create the PSR recommended you start at the 5 to 11 and then take it from there and our panel told them to start at 51 and take it from there correct me why why isn't that a procedural error because the starting at 51 and taking it from where they're the first step is rooted in 18 USC 3565 a2 which says district court when you revoke the sentence you have to re-sentence that means re-sentence on the underlying offense and when that re-sentencing is done in step one that requires taking a look at the facts at the time of the initial sentencing and determining an appropriate sentence for the underlying offense and I think Mr. Moore argues that what the anchor should be just the chapter 7 policy statements but chapter 7 doesn't say that at all in fact chapter 7 if you look at the introductory commentary to part a of chapter 7 it completely disclaims having anything to do with any criminal offense much less the underlying criminal offense and it says those guidelines for example in the policy statements in the chart and 71.4 is just focused on violations of what is the anchor that I mean if I'm a judge I want to I won't do what the statutes tell me to do right I mean what is the anchor then so the 8582 or 3565 so I think it would be at step one under more one step one the anchor would be the chapter 5 so you look at 3553 a4a at step 1 and the anchor would be the guidelines under chapter 5 and as in any ordinary sentencing case and then for step 2 when you're looking at what penalty or sentence should be imposed for the violation itself which is separate from the underlying criminal offense then the anchor would be the chapter 7 policy statements and that's where you get the 5 to 11 months and even though this court's decision in more one that two-step process I have not found in another case that adopts a process like that but it doesn't really matter for the case and it's binding precedent of this court and so judge Tim to get a second part it doesn't chapter 7 part a to indicate this two-step process is a relic of pre-guideline sentencing doesn't say that I don't I don't think it says that if I if I understand correctly what you're getting at it's relic isn't in fact a relic of pre-guideline sentencing no in fact more one put its finger on that and said that one of the problems with what the district court did in the first place is is the sentencing bargain was itself a relic of pre-guideline sentencing it it basically acted like a suspended sentence the two-part sentencing process this were articulated in more one it is not a suspended sentence system because what the court said and what the guidelines suggest is that the problem with suspended sentencing is you're basically setting a sentence that will automatically be triggered at some future date based on some future act that is unknown at the time of the imposition of the sentence so the problem is that sentence in advance system this is not a sentence in advance system I'm assuming I didn't go back and look at the briefs in more one but you're saying there is no authority other than more one for the two-step process in more one and based on that I'm assuming if I look at the briefs the prosecution never briefed to do a two-step process that's correct does that inform our analysis of whether this is law in the case the fact that this is an issue that was never subjected to the adversary process I don't think it affects this court's analysis whether it's law of the case and maybe what you're getting at is the question of whether it could be dicta and and I don't think so and so in addition to the sentence I mentioned earlier in addition to this court directing the district court to apply the the two-part test which I think pretty directly tells both the district court and subsequent panels of this court that the two-part analysis is not dicta the the panel in more one relied on the two-part analysis in in fleshing out and deciding prongs two and three of plain error because remember the the case was before this court in more one on plain error review and in summing up its discussion of its determination that the error was plain the panel said the record does not suggest that the district court or the district court had a two-part analysis in mind and because of that there's not a sufficient record to determine you know what happened and therefore judicial review can't properly happen therefore prong two is satisfied and then in discussing prong three the prejudice prong this court held that mr. Moore had shown that there is a realistic possibility of a different sentence on remand precisely because it wasn't clear what sentence the district court would have on the two-part analysis so I did look at the more one briefs and there was no no argument about this two-step process right at all you know and the government didn't advocate it the defense didn't ask for it you know it came ex milo you know out of nowhere and without any you know without any case citation that's that's what bothers me about this because right I to the extent future district judges look at look for guidance you know functionally at all really functionally it looks like the the old days before the reform that it functions as a suspended sentence well it doesn't says it I'm talking about the 51 months right in this case sort of it it's lurking as a suspended sentence on for the resentencing so the 51 months doesn't act as a suspended sentence because the problem with suspended sentencing is it imposed a sentence without knowing what the future act would be that would trigger that sentence so the 51 months was based on facts that were all known and determined at the time so it's not suspended and then going to take effect based on unknown future acts the the second thing I would say and getting back to the second part of your original question judge Tinkovich is that this court has a process if a panel thinks that another panel got it wrong and that's en banc review it's not one panel reversing another panel through the back door by saying that the majority of the analysis from the prior panel was dicta and and I think there's just no basis for finding that even though the analysis the two step process wasn't advocated by either party that's not the definition of dicta the definition of dicta is whether the statements in the opinion were necessary for the judgment and I and I think they were for the four reasons that I gave they weren't necessary for the judgment because the the issue on appeal was whether the pre-sentence was procedurally unreasonable the answer that was yes there's not the tube you know offering a suggestion on revamped you know really is irrelevant to the substantive question that was before the panel well I mean that's kind of sounds like dicta I mean I did I disagree with that because it if you look again at the briefing in more one mr. Morgan not just did not argue that the his sentence should be vacated because the district court engaged in some improper sentence in advance scheme in fact on page 11 of his opening brief and more one he said I'm not trying to challenge this bargain just because it's gone south on me I'm saying that the district court should have considered the 3553 a factors in saying that 84 months was appropriate so the thrust of that argument really put before this court okay what is the appropriate sentencing sort of procedure here is it just to look at the 3553 a factors is it something else and and so I think it was properly before the court and again more one was before this court on plain error review and this court relied on for purposes of prong two and prong three the two-step analysis saying that we know that mr. Moore was prejudiced because the district court didn't apply the two-step analysis it's not clear to me that if the district court were simply required to apply this more sort of loosey-goosey sentence sentencing procedure that mr. Moore advocates basically look at the chapter 7 policy statements with a 20 20 year statutory maximum whether actually his 84 month sentence gets vacated because the two-step analysis was so central to the vacator of his sentence in the first place and I'd like to touch on the second reason that mr. Moore gave which is manifest injustice he hasn't cited a single case where this court has relied on manifest injustice to get around law of the case and in fact a case of this court Alvarez which you cite in the manifest injustice is that informed at all by the proposition that under chapter 7 number 2 he could have gotten 20 years yes I think that is and he originally had gotten 84 months and now he's down to 80 so does that inform that issue yes I think it does and I think it also informs but you can't just agree with me well well so I'll give you a case so the Alvarez case that I mentioned which we cite in the brief it's a 1998 so it's a little bit dated but in in that case this court said we've looked and we haven't found a single decision ever that has ever relied on manifest injustice to get around law of the case it cited a Ninth Circuit case where where a panel did that but then it was not sure if it even is a an exception with any teeth to the law of the case doctrine and then if I may I'd like to touch on prong three of plain error review because of course this case is before this court now on plain error review and now we have two data points we have the original sentence of 84 months and we have the resentencing at 80 months we have multiple hearings where where the district court judge has dealt with this defendant has laid out numerous reasons why the district court believes that a long sentence is required in this case now can I tell you that the district court judge will impose the same exact sentence if it happens to go back to him again I don't know that but it's very clear that the reasons that the district court gave support the 84 month sentence that it imposed originally support the 80 month sentence that has imposed now and there's no reason to believe that a different sentence is going to be imposed if it gets remanded for a third time yeah I know I know your time's almost up but assume we disagree with with that and order remand what would what would you advocate before judge on how to proceed with with a third sentencing I suppose it would depend what this court says is the proper analysis I you know we let's say we're not going to do a three-step okay okay I mean I'm just I'm asking really what you think the proper remedy would be if we remanded well I think if if you remand it would be important to explain what the process is and then I get with the government would have to take a look at it if it's if it's if it's one step and the chapter 7 policy statements are the anchor I mean I suppose we would have to go back and look I know and initially the government recommended middle of the 5 to 11 month range I think eight months but that was when we were looking at it more like supervised release I think more one correctly corrected that mistaken view of the law so I can't unfortunately now sort of predict what the government would do but quite frankly in many respects the government has sort of been a bystander in this case for much of it because really the back-and-forth between the district court judge and the defendant has and then this courts articulation of the two-step process has really dictated the terms I would just caution this court before saying that really most of the analysis and more one was dicta to pause because that really could affect future cases in the way that district courts read this courts decisions and how they view stare decisis and law of the case as judge Timkovich is indicated that if if the two-step process is a relic of the time before the sentencing reform and it did not take any consideration chapter 7 then that's what we're telling posterity is the rule in the Tenth Circuit if we say it's dicta and you go to chapter 7 and you do one sentence and you do a proper analysis 3553 a and violation of probation guidelines but you're only confined because all that's advisory by a 20-month 20-year cap I mean couldn't that be just as right if the view if what the previous panel said was dicta so two responses one with respect to pre-existing Tenth Circuit law there is no controlling pre-existing Tenth Circuit case law on this point all the cases mr. Moore has cited are unpublished and so there's nothing that's binding and and so there's there's that so I think this court would have to articulate what the right test is and effectively overrule that analysis and more one with respect to what the right process is you know I think this court would have to grapple with what 3565 a to means by resentencing I don't think that the sort of traditional common understanding of resentencing is to look at policy statements that don't address the and I think that I mean that's one of the problems of dealing with this issue in this context because you know all of the all of those permutations and arguments aren't really fleshed out here either because we're relying on on what more one said and I do think more one is right there's something fundamentally different between a revocation of probation and a revocation of supervised release resentencing requires taking into account that there needs to be a sentence for the underlying criminal offense and the chapter 7 policy statements don't know you said is very clear from chapter 7 sorry that's very clear from chapter 7 it is clear from chapter 7 but it's also clear from chapter 7 that those policy statements do not address the underlying criminal offense which needs to be addressed for purposes of resentencing yeah they're there they really are confusing on the direction they give for this for then trying to figure this out how it should work is very confusing and I think that's a great point and that gets to the second prong of plain error that if this is confusing and what we're left with is what more one said and even if this court were to think that what more one said about the two-step analysis is dicta what we're left is with is more one which to the district court would be persuasive a persuasive interpretation of what could be confusing statutes and statements and some unpublished 10th Circuit cases that suggest maybe a different analysis should apply that is anything but a plain error that you know a plain error has to be well established by a decision of this court the Supreme Court or finding out-of-circuit precedent and there just isn't that much precedent on this there isn't really much precedent at all that really grapples with the statutes and the guidelines the way that we're doing now so that's why but for those reasons the government would ask this court to affirm mr. Moore's sentence thank you thank you we let you go over it would you like some rebuttal yeah you'd give them two minutes more thank you your honor first I just want to point this court to 3553 a4 that's the statute in the 3553 a factors that tells courts to consider that has to consider the guidelines and the guideline range a4 a applies generally to directs courts to consider the guidelines promulgated under 944 a1 which applies which are the original offense guidelines and then B so it says a and it says or B and B tells judges to consider in the case of probation or super and in the case of a violation of probation or supervised release the court must consider the guidelines promulgated under 994 a3 which is the guidelines that apply to probation and supervised release if that said and then we would that would be a clear signal that the two-step process is correct because in all cases you would have to do the original offense and in the case of probation's probation you have to do the probation what it says what do we've got the point that judge Murphy was making that chapter 7 part a says that the court can revoke probation and quote impose any other sentence that initially could have been imposed that's referring to that's I believe that's the original intro language when and it's just referring to the statutory sentencing range so again unlike supervised release revocations would have its own statute statutory maximum sentences the statutory range for probation for probation violations is always just the original offense and then getting back to a for a versus a for B a for B was the statute was amended in 1994 specifically to make clear that in probation and supervised release revocations you apply B you realize I'm out of time. Wait a minute. Your analysis vis-a-vis the guidelines is merely recommended not binding what what chapter 7 2a says is when there's been a or you can sentence anew a single sentence but you can sentence up to 20 years so it's you're kind of starting over albeit you have the pre-sentence report from the original sentence but this judge when looking at that thought that if you're not gonna get probation you should get 84 months. So the the statute 3565 a2 which says you can revoke the sentence of probation and resentence the defender resents the defendant under subchapter a that's generally referring back to the 3553 a factors and then 3553 a for B specifically says that in the case of supervised release and probation revocations you look at those guidelines and it's it's an either or it's a or B it's not and so you don't look at the initial offense guideline you look at the probation revocation guidelines. Okay thank you counsel we appreciate the arguments very interesting case and counsel's excuse The case is submitted.